Filed 7/13/23  Pacific Indemnity Co. v. Continental Ins. Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY, | B320417 |
| Plaintiff and Respondent; | (Los Angeles County Super. Ct. No. BC561655) |
| CONTINENTAL INSURANCE COMPANY, | |
| Defendant and Respondent; | |
| v. | |
| NORTHROP GRUMMAN SYSTEMS CORPORATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge. Reversed with directions.

Pasich, Michael S. Gehrt, Kirk Pasich, and Nathan M. Davis for Defendant and Appellant.

Chamberlin & Keaster, Kirk C. Chamberlin and Michael C. Denlinger for Plaintiff and Respondent.

Berkes Crane Santana & Spangler, Steven M. Crane and Barbara S. Hodous for Defendant and Respondent.

## INTRODUCTION

Northrop Grumman Systems Corporation appeals from a stipulated judgment entered after the trial court granted a motion for summary adjudication filed by Northrop's insurers, Pacific Indemnity Company and Continental Insurance Company. Pacific Indemnity filed this action after Northrop sought coverage under commercial general liability insurance policies issued by Pacific Indemnity and Continental for a lawsuit filed by Hot Rods, LLC, the owner of property in Orange County Northrop sold to Hot Rods' owners. In that action Hot Rods sued Northrop for damages and equitable relief relating to Northrop's contamination of the property and subsequent efforts to remediate the contamination.

The trial court ruled Pacific Indemnity and Continental did not have a duty to defend or indemnify Northrop in the underlying action by Hot Rods because Hot Rods' alleged injuries occurred after the relevant policies expired and affected only the property Northrop had owned or alienated. Contrary to the trial court's ruling, we conclude the allegations in Hot Rods' complaint created the possibility of coverage and therefore triggered the insurers' duty to defend Northrop. We also conclude, however, that Northrop forfeited the argument the insurers had a duty to indemnify and that, in any event, Northrop has not shown the

2

trial court erred in granting the insurers' motion for summary adjudication concerning indemnification. Therefore, we reverse the judgment and direct the trial court to enter a new order denying the insurers' motion for summary adjudication regarding the duty to defend and granting the motion regarding the duty to indemnify.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Pacific Indemnity and Continental Issue Insurance Policies to Northrop*

Northrop owned property in Orange County where it conducted various aerospace operations that used toxic chemicals (the Property). Pacific Indemnity provided commercial general liability coverage to Northrop for the Property from 1955 to 1974, and Continental provided similar coverage from 1979 to 1984. The policies issued by Pacific Indemnity required it to pay Northrop "all sums which [Northrop] shall become legally obligated to pay as damages because of injury to or destruction of property, including but not limited to the loss of use of property." The policies also required Pacific Indemnity to defend any suit against Northrop "alleging such injury, sickness, disease, or destruction, and seeking damages on account thereof, even if the suit is groundless, false or fraudulent." The policies applied to "accidents or occurrences wherever they may occur during the policy period" and defined "[o]ccurrence" as "an event or a continuous or repeated exposure to conditions which result in injury or damage during the term of this policy." The policies excluded from coverage "injury to, or destruction of property

3

owned, occupied, or used by or rented to [Northrop]" and "property in the care, custody or control" of Northrop.

The policies issued by Continental required it to pay Northrop "all sums that [Northrop] shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence." The policies defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in 'bodily injury' or 'property damage' neither expected nor intended from the standpoint of the insured." The policies defined "property damage" to include "physical injury or destruction of tangible property which occurs during the policy period" and required Continental to defend Northrop in any suit "seeking damages on account of such . . . property damage." The policies excluded from coverage liability for property damage to "property owned or occupied by or rented to [Northrop]" and to "premises alienated by [Northrop] arising out of such premises or any part thereof."

B.     *Northrop Sells the Property, and the Buyers' Successor-in-interest Sues Northrop*

In 1995 Northrop entered into an agreement to sell the Property to Daniel and Kathy Welden, the owners of Hot Rods, an auto parts business. The agreement included an environmental indemnity provision that required Northrop to indemnify the buyers and hold them harmless from and against "any claims, demands, penalties, fees, fines, liability, damages, costs, losses, or other expenses including without limitation reasonable environmental consulting fees and reasonable attorney fees arising out of (a) any Environmental Action(s) and/or Remediation involving an environmental condition or

4

liability involving the [Property] caused by an act or omission of [Northrop] before or after the Closing; (b) any personal injury . . . or property damage . . . arising out of Hazardous Materials used, handled, generated, transported, disposed, or released by [Northrop] at the [Property] before or after the Closing."

Hot Rods sued Northrop in 2009 and asserted eight causes of action; an amendment filed in 2011 added another six causes of action (the Hot Rods action). Hot Rods alleged that, at the time Northrop sold the Property, "all parties to the transaction recognized that the Property had been contaminated with hazardous materials. However, remediation had taken place and it appeared . . . that the Property was no longer significantly contaminated. Nonetheless, monitoring wells were in place on the Property, and remained there, as required by the California Regional Water Quality Control Board, Santa Ana Region (RWQCB)." Hot Rods further alleged Northrop was "aware that the property was substantially more contaminated" than Hot Rods or the RWQCB believed it was. Hot Rods alleged that, when Northrop owned the Property, Northrop "generated substantial hazardous waste on the Property, which required remediation." Hot Rods further alleged "hazardous materials . . . found their way into the water table and . . . continue to contaminate the underground water supply in the area."

Hot Rods alleged it learned in 2007 that certain monitoring wells on the Property showed "an increase in contaminant levels." According to Hot Rods, these tests showed "contamination broadly distributed in the earth of the Property," as well as "substantial groundwater and earth contamination, not only under the Property, but in the surrounding area." In its complaint Hot Rods acknowledged "ongoing litigation brought by

5

the Orange County Water District against Northrop and others relating to this extensive contamination." Indeed, the Orange County Water District sued Northrop and other companies in 2005 seeking damages and other relief "to protect the groundwater resources of Northern Orange County from toxic pollution" that allegedly occurred "[o]n various dates since 1951." Pacific Indemnity and Continental contributed to Northrop's defense in that action.

As part of its efforts to remediate air and soil vapor contamination at the Property, Northrop installed a "soil vapor extraction (SVE) system." Hot Rods alleged that the SVE system was operating "at a fraction of its capacity" and that "[t]here [was] no guarantee that the system will be completely successful." Hot Rods also alleged that the installation of the SVE system caused extensive damage to the Property necessitating a variety of repairs; that a newly discovered underground storage tank could cause additional contamination; and that other remediation efforts on the Property required Hot Rods and its tenant to incur various expenses, delayed the commencement of another tenant's lease, and diminished the rental and actual value of the Property.

Regarding groundwater, Hot Rods alleged that, "if the water table rises (such as can happen during a period of heavy rain), it is possible that the contamination in the water could be spread to the soil higher up, adding to the contamination already there, or possibly even undoing the benefits of remediating the soil of the Property." Hot Rods also alleged Northrop intended to install certain equipment over Hot Rods' objections to remedy the groundwater contamination at issue in the Orange County Water

6

District litigation.  Hot Rods alleged the installation of that equipment would diminish the value of the Property.

Based on these and other allegations, Hot Rods' first through eighth causes of action alleged breach of contract, fraud, negligent misrepresentation, private nuisance, public nuisance, trespass, and violation of Business & Professions Code section 17200 (section 17200) and sought declaratory and injunctive relief.[1]  As a result of the alleged breach of contract, fraud, and negligent misrepresentation, Hot Rods sought damages for "loss of use, diminution in value, physical damage to the [P]roperty, loss of interest on monies expended, attorney's fees and costs, consultant's fees and costs, reimbursement of the reasonable value of time expended to address contamination, loss of present and future economic opportunity, and unknown costs related to the cleanup of the Property."[2]

Regarding the causes of action for private and public nuisance, Hot Rods alleged, among other things, that Northrop attempted to remove "contaminants which have affected the soil, water and air of the Property and surrounding land," but that such efforts "have caused contaminants to remain on the Property" and "negatively affect the potability of water."  Hot Rods alleged the nuisance could be "abated through proper remediation efforts" and requested an order requiring Northrop to "fully abate the nuisance, by removing all contaminants in the

---

[1]    In the amendment to the complaint, Hot Rods alleged additional causes of action for breach of contract, fraud, negligent misrepresentation, trespass, and declaratory and injunctive relief that are not relevant to this appeal.

[2]    The causes of action for fraud and negligent misrepresentation also sought damages for "investigatory costs."

7

Property" and to reimburse Hot Rods "for all reasonable costs associated with any abatement ordered hereunder."

Hot Rods' cause of action for trespass alleged contaminants placed on the Property, which affected the soil, water, and air, constituted a trespass, for which Hot Rods sought, among other things, an order requiring Northrop to remove all contaminants in and adjacent to the Property. Hot Rods also sought an order requiring Northrop to reimburse Hot Rods for the costs associated with any such abatement. Hot Rods' cause of action for violation of section 17200 also sought an order requiring Northrop to remove the alleged contaminants, including contaminants "on the Property, in the surrounding land, and in the water table." Hot Rods' cause of action for declaratory and injunctive relief sought an order requiring Northrop to reimburse Hot Rods for damages caused by Northrop's "failure to properly remediate the contamination," "for costs and damages arising from future remediation," and "for other costs and damages arising from the continued presence of contaminants in and on the Property, the surrounding land, and in the water table." Hot Rods also requested an order "of specific performance that Northrop is required to perform all contractual obligations under the [1995 purchase and sale agreement], including the abatement and remediation of the Property."

Northrop tendered the Hot Rods action to Pacific Indemnity and Continental in 2009. Pacific Indemnity agreed to participate in Northrop's defense subject to a reservation of rights; Continental did not.[3]

---

[3] Northrop also tendered the Hot Rods action to Great American Insurance Company, which, like Pacific Indemnity, agreed to defend Northrop subject to a reservation of rights.

C.  *The Trial Court Enters Judgment in the Hot Rods*
    *Action, and Northrop Appeals*

Northrop and Hot Rods agreed to a trial by reference of all issues of fact and law, under Code of Civil Procedure section 638, and the court appointed a retired judge to serve as the referee.  In 2013 the referee found that Northrop disclosed its plan to place wells on the Property to monitor groundwater contamination to the Weldens, but that Northrop did not know "the extent of the environmental remediation subsequently required."  In particular, the referee found that by 1994 Northrop had some knowledge it contributed to groundwater contamination under the Property, which compromised the concrete in and around a building that had created "a barrier to the escape of soil vapor and the leaching of contaminants in the soil to the groundwater."  The referee also found that the presence of groundwater contamination placed the Property "at risk of substantial remediation activities on the surface to extract soil vapor and gas as well as monitor ground water."  In addition, the referee found that, since the sale of the Property, the Regional Water Quality Control Board had "required Northrop to spend millions on remediating soil and groundwater contamination" in light of "developing knowledge of how much cleanup and abatement of soil, soil gas, and groundwater must take place to safeguard the environment."

The referee concluded that Northrop's conduct in failing to disclose the extent of the soil and groundwater contamination

---

Great American joined Pacific Indemnity in suing Northrop in this action, but settled its dispute with Northrop in September 2020.

9

was negligent, but not fraudulent, and that Northrop breached the indemnity provision in the purchase and sale agreement. The referee ordered Northrop to pay "damages suffered by Hot Rods as a result of the contamination and required remediation activities." The referee also declared Northrop was responsible for all future reasonable "'losses, costs, and expenses incurred in connection with contamination and remediation'" and "harm that may take place as a result of environmental contamination expenses . . . ." The referee awarded Hot Rods $1 million in damages for remediation activities that impaired the use of the Property and approximately $117,000 for lost rent, air testing, and utilities attributable to Northrop's activities on the Property. Regarding compensation for lost rent, the referee stated the evidence showed the potential tenant delayed proceeding with its lease because of "concerns over air contamination in the portion of the [P]roperty to be leased." The referee denied Hot Rods' requests for damages for diminution in the value of the Property and for punitive damages and awarded Hot Rods attorneys' fees and costs. In January 2014 the trial court entered judgment pursuant to the referee's statement of decision.

Northrop appealed from the judgment, and the Court of Appeal reversed the $1 million award for loss of use of the Property and the award of attorneys' fees and costs. (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1170, 1185.) On remand the referee found Hot Rods was still the prevailing party and again awarded attorneys' fees and costs. The Court of Appeal affirmed. (*Hot Rods, LLC v. Northrop Grumman Corp.* (Dec. 5, 2018, No. G054432) [nonpub. opn.].)

10

D. *Pacific Indemnity Files This Action Against Northrop and Continental, and the Trial Court Enters Judgment for the Insurers*

In 2014 Pacific Indemnity filed this action against Northrop and Continental seeking a declaration Pacific Indemnity had no duty to defend or indemnify Northrop in the Hot Rods action and asking for full or partial reimbursement for the cost of Northrop's defense. Alternatively, Pacific Indemnity sought a declaration Continental had a duty to defend Northrop and equitable contribution from that insurer. Northrop filed a cross-complaint against the insurers alleging breach of contract and tortious breach of the implied covenant of good faith and fair dealing.

Pacific Indemnity and Continental filed a joint motion for summary adjudication on the issues of duty raised by the complaint and Northrop's cross-complaint. The insurers argued the allegations in the Hot Rods action did not trigger a duty to defend Northrop because, among other reasons, Hot Rods did not allege any harm occurring during the policy periods. In particular, the insurers argued Hot Rods could not have alleged harm occurring before 1995, when the Weldens purchased the Property, and Hot Rods did not allege any actual injuries occurred until 2007. The insurers also argued they did not have a duty to indemnify Northrop because Hot Rods did not recover damages for injuries that occurred during the policy periods and the policies excluded coverage for harm to property Northrop owned or alienated.

Northrop argued the harm alleged by Hot Rods "flows from the premise that Northrop is responsible for the Property's contamination, and without that allegation, there is no basis for

11

the rest of the lawsuit." Under California law, Northrop argued, "'[i]t is only the *effect*—the occurrence of . . . property damage during the policy period . . . —that triggers potential liability coverage.'" (See *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 675 (*Montrose II*).) Because the original contamination occurred when the policies were in force, Northrop argued, the Hot Rods action was covered. Northrop argued the "owned property" and "alienated property" exclusions did not apply because Hot Rods alleged Northrop contaminated the groundwater, which Northrop did not own. (See Wat. Code, § 102 ["All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law."]; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 818, fn. 6 [same]; *A-H Plating, Inc. v. American National Fire Ins. Co.* (1997) 57 Cal.App.4th 427, 442 ["It is well settled that the state and federal governments, not [the insured], own the groundwater."].) Northrop conceded Hot Rods' causes of action for fraud and misrepresentation did not trigger the insurers' duty to defend.

The trial court granted the insurers' motion for summary adjudication on their complaint and Northrop's cross-complaint, ruling there was no potential for coverage for two reasons. First, the court concluded that, if it accepted Northop's argument the property damage occurred when Northrop owned the Property and the insurance policies were in effect, Northrop damaged only "its then-owned, now-alienated property," which would mean the owned property and alienated property exclusions applied. The court rejected Northrop's argument the Hot Rods action was based in part on groundwater contamination because a different action brought by the Orange County Water District "addressed"

12

that contamination; thus, the trial court reasoned, any additional remediation efforts undertaken by Hot Rods were limited to Northrop's previously owned property.  Second, the court concluded the policies did not cover breach of contract claims alleging Northrop failed to indemnity Hot Rods because "that 1995 obligation was incurred (and breached) well outside the coverage period . . . the last of which was in effect until 1984." The parties stipulated to entry of judgment to facilitate Northrop's intent to appeal,[4] and Northrop timely appealed from the stipulated judgment.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

"A liability insurance policy ordinarily imposes on the insurer both a duty to defend the first-party insured and a duty to 'indemnify the insured . . . for harm proved within coverage.'" (*Guastello v. AIG Specialty Ins. Co.* (2021) 61 Cal.App.5th 97, 102; see *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 957.)  "'"The issue is largely one of timing—what must take place *within the policy's effective dates* for the potential of coverage to be 'triggered'?"'"  (*Guastello*, at p. 102; see *State of California v. Continental Ins. Co.* (2012)

---

[4]    "[T]here is an exception to the rule that a party may not appeal a consent judgment.  If consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal." (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817; accord, *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400; *Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1198.)

13

55 Cal.4th 186, 196.)  In general, an "'occurrence' policy provides coverage for damages that occur during the policy period, even if the claim is made after the policy has expired." (*Guastello*, at pp. 102-103; see *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 56 [coverage is "triggered if specified harm is caused by an included occurrence, so long as at least some such harm results within the policy period," fn. omitted].)  "'[I]t is well established that the time of the relevant "occurrence" or "accident" is not when the wrongful act was committed but when the complaining party was actually damaged.'" (*Guastello*, at p. 103; see *Montrose II*, *supra*, 10 Cal.4th at pp. 669; *Century Indemnity Co. v. Hearrean* (2002) 98 Cal.App.4th 734, 739.)  "It is also a 'settled rule . . . when continuous or progressively deteriorating damage or injury first manifests itself' the insurer 'remains obligated to indemnify the insured for the entirety of the ensuing damage or injury.'" (*Guastello*, at p. 103; accord, *Montrose II*, at pp. 686-687; see *Aerojet-General Corp.*, at p. 75 ["although the *trigger* of the duty to defend is limited to the policy period, the *extent* of the duty to defend is not"].)

The duty to defend is broader than the duty to indemnify. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 (*Montrose I*).)  A liability insurer has a duty to defend its insured against claims "'that create a potential for indemnity.'" (*24th & Hoffman Investors, LLC v. Northfield Ins. Co.* (2022) 82 Cal.App.5th 825, 833; see *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 40; *Montrose I*, at p. 295.)  But if there is no potential for coverage, the insurer has no duty to defend.  "This standard is met '"if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*."'" [Citation.]  Thus, the

14

duty to defend is 'not without limits'; rather, it is 'limited by "the nature and kind of risk covered by the policy."'" (*24th & Hoffman Investors*, at pp. 833-834; see *La Jolla Beach & Tennis Club*, at p. 39; *Montrose I*, at p. 300.)  In "a 'mixed' claim, in which at least one of the parts is at least potentially covered and at least one of the parts is not, the insurer . . . has a *prophylactic* duty to defend the entire 'mixed' claim.  That is because to defend meaningfully, it must defend immediately, and to defend immediately, it must defend entirely." (*Aerojet-General Corp. v. Transport Indemnity Co.*, *supra*, 17 Cal.4th at p. 60; accord, *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 991-992; *24th & Hoffman Investors*, at pp. 836-837.)

"The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is *no* potential for coverage . . . ." (*Montrose I*, *supra*, 6 Cal.4th at p. 295; see *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655.)  "When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'" (*Scottsdale Ins. Co.*, at p. 655; see *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 [the duty to defend "may be extinguished . . . if it is shown that no claim can in fact be covered," but the duty "is extinguished only prospectively and not retroactively: before, the insurer had a duty to defend; after, it does not have a duty to defend further"]; *American Internat. Specialty Lines Ins. Co. v. Continental Casualty Ins. Co.* (2006) 142 Cal.App.4th 1342, 1370 [same].)

"'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.' . . . 'We

15

resolve any doubts about whether the facts establish a duty to defend in favor of the insured.'" (*24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, *supra*, 82 Cal.App.5th at p. 834; see *Montrose I*, *supra*, 6 Cal.4th at pp. 295, 299-300.) "'On summary judgment, "[t]o prevail [on a duty to defend issue], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." [Citations.] "'[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion." [Citation.]' [Citation.] In contrast, an insured must prove its claim may fall within policy coverage, even when the insurer has moved for summary judgment.'" (*Ghukasian v. Aegis Security Ins. Co.* (2022) 78 Cal.App.5th 270, 274; see *Montrose I*, at p. 300.) We review the trial court's ruling on summary adjudication de novo. (*Ghukasian*, at p. 274; see *Dua v. Stillwater Ins. Co.* (2023) 91 Cal.App.5th 127, 135.)

B.    *The Complaint in the Hot Rods Action Created the Potential for Coverage and Triggered the Duty To Defend*

Northrop argues Pacific Indemnity and Continental had a duty to defend Northrop in the underlying Hot Rods action because historic "groundwater remediation formed part of the

16

liability that Northrop faced" in that action and Northrop did not own or alienate the groundwater. Northrop concedes damage to the actual Property did not trigger the duty to defend or to indemnify because of the owned property and alienated property exclusions in the policies. But Northrop contends Hot Rods sought damages and equitable relief to address past and future harm that arose from groundwater contamination that began during the policy periods.

Pacific Indemnity and Continental are correct that some of the damages and other relief Hot Rods sought in the underlying action did not appear to arise from alleged groundwater contamination or concern injuries occurring during the policy periods. At a minimum, however, the causes of action for public and private nuisance, unlawful and unfair business practices, and injunctive and declaratory relief created a potential for coverage, which was enough to trigger the duty to defend. For example, as stated, Hot Rods alleged there was substantial groundwater contamination and sought equitable relief and damages to remove all contaminants "in and adjacent to the Property such that the remediation complies with all applicable laws . . . regarding the area to be abated, including the [P]roperty." Hot Rods also sought equitable relief and "costs and damages arising from future remediation," including costs and damages related to "the continued presence of contaminants in and on the Property, the surrounding land, and in the water table." These allegations included the potential for liability for remediating groundwater contamination and were not limited to contamination of the Property or buildings on the Property. Thus, they created the potential for coverage under the policies. (See *AIU Ins. Co. v. Superior Court*, *supra*, 51 Cal.3d at p. 814

17

[insurance policies provided coverage for the costs of reimbursing third parties and complying with injunctions ordering the polluter to remediate groundwater and other contamination]; *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1043 [complaint alleging the insureds were liable for damages because of "possible pollution of the groundwater" created the potential for coverage and thus triggered the duty to defend]; *A-H Plating, Inc. v. American National Fire Ins. Co.*, *supra*, 57 Cal.App.4th at p. 442 ["because there is no evidence that [the insured] owned, occupied, rented, used, cared for, possessed, or controlled the groundwater, the owned property exclusion did not eliminate the *potential* for coverage" where the third party complaint alleged groundwater contamination].)

The insurers argue the allegations in Hot Rods' causes of action for public and private nuisance, unlawful and unfair business practices, and injunctive and declaratory relief "are for Northrop's actions after Hot Rods demanded in 2007 that it do the remediation" and thus "are not concerned with historical contamination." The insurers point to allegations in the causes of action for private and public nuisance that "*currently*" Northrop has "caused to be placed on the Property[] contaminants which have affected" the groundwater, suggesting Hot Rods sought only damages and equitable relief for "post-policy damages." But even if we read the word "currently" to limit the scope of those allegations to Northrop's post-2007 actions, that qualification does not appear in the causes of action for violation of section 17200 and for declaratory and injunctive relief. For example, the cause of action for violation of section 17200 is based on Northrop's alleged "deposit . . . of contaminants" in the

18

groundwater, which occurred long before 2007. And the cause of action for declaratory and injunctive relief (which the insurers do not address) is based on Northrop's alleged "failure to properly remediate the contamination to the Property," resulting in the "continued presence of contaminants in and on the Property" and in the groundwater. Hot Rods alleged those contaminants originated from Northrop's activities on the Property, which in another context the insurers have conceded occurred during the policy periods.[5]

The insurers also argue that the Orange County Water District action concerned "historical groundwater contamination" and that "Hot Rods did not sue Northrop to clean up the historical groundwater contamination, as OCWD did." As discussed, the insurers read the allegations in the Hot Rods action too narrowly, and, as Northrop argues, the existence of the Orange County Water District action did not preclude Hot Rods from seeking damages from Northrop relating to the removal of contaminants from the groundwater. Separate and apart from the Orange County Water District action, the allegations in the Hots Rods action could have resulted in damages for "investigating, monitoring, and initiating cleanup" of groundwater contamination, for which Northrop is responsible. (See *AIU Ins. Co. v. Superior Court*, *supra*, 51 Cal.3d at p. 816; see also *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*, *supra*, 68 Cal.App.4th at p. 1044 [damages requested in a third party complaint are not necessarily limited to

---

[5] The insurers agreed to defend Northrop in the Orange County Water District action, where the government claimed Northrop contaminated the groundwater at the Property during the policy periods.

19

reimbursement for remediation ordered by a government agency].)

Finally, the insurers argue there is no potential for liability because "it is not conduct during the policy period that triggers coverage, but when the complaining party (Hot Rods) was damaged and what damages the complaining party alleges." The insurers' argument, however, fails to account for Hot Rods' allegations of "continuous or progressively deteriorating" property damage that began during the policy periods and "trigger[ed] potential liability coverage." (*Montrose II, supra,* 10 Cal.4th at p. 675.) Thus, a case the insurers cite and attempt to distinguish—*Garriott Crop Dusting Co. v. Superior Court* (1990) 221 Cal.App.3d 783—actually supports finding a duty to defend Northop in the Hot Rods action. In *Garriott* the City of Bakersfield bought property adjacent to the insured's property 15 years after the insured's acts or omissions contaminated its property and adjacent properties, including the one purchased by the City. (*Id.* at p. 786.) The City sued the insured for damages and injunctive relief, and the insured tendered the complaint to its insurers. The court in *Garriott* stated that the question raised by the policy language for purposes of determining whether the insurers had a duty to defend the insured against the City's action was "not when the City was damaged; it is, instead, when the property now owned by the City was damaged." (*Id.* at p. 791; see *Montrose II*, at pp. 688-689 [insurer had a duty to defend where the continuing property damage began before the plaintiff in the underlying action purchased the contaminated property]; *Standard Fire Ins. Co. v. Spectrum Community Assn.* (2006) 141 Cal.App.4th 1117, 1129 [insurers had a duty to defend a lawsuit by a condominium association after the policies

20

ended, where the alleged property damage arose from a construction defect that occurred during the policy periods]; *Century Indemnity Co. v. Hearrean*, *supra*, 98 Cal.App.4th at pp. 740-741 [insurers had a duty to defend a lawsuit by a third party for construction defect that occurred during the policy periods, even though the third party did not purchase the property until after the policy expired].)

C. *Northrop Has Not Shown the Trial Court Erred in Granting the Insurers' Motion for Summary Adjudication Regarding the Duty To Indemnify*

The trial court did not address whether Pacific Indemnity and Continental had a duty to indemnify Northrop because the trial court found the insurers had no duty to defend Northrop in the Hot Rods action. (See *Certain Underwriters at Lloyd's of London v. Superior Court*, *supra*, 24 Cal.4th at p. 958 ["Where there is a duty to defend, there *may be* a duty to indemnify; but where there is no duty to defend, there *cannot be* a duty to indemnify."].) In its opening brief Northrop does not argue the trial court erred in granting the insurers' motion for summary adjudication on the duty to indemnify. The only mention in Northrop's opening brief of the duty to indemnify is in support of its discussion of the duty to defend.[6] Northrop does not argue

---

[6] Northrop does state, in the section of its opening brief titled "Principles of Insurance Policy Interpretation," that it "also seeks indemnification promised under the Policies for the sums awarded to Hot Rods," but Northrop does not explain why or how the trial court erred. (See *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"]; *Benach v. County of Los*

21

that, if we reverse the order on the (broader) duty to defend, we should reverse the order on the duty to indemnify.  Therefore, Northrop forfeited any argument the trial court erred in granting the motion on the latter issue.  (See *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing to raise it in the opening brief."]; *Western Growers Assn. v. Occupational Safety & Health Standards Bd.* (2021) 73 Cal.App.5th 916, 947 [same].)  The forfeiture rule applies even though the insurers discuss the duty to indemnify in their respondents' brief because Northrop precluded the insurers from responding to the argument Northrop made for the first time on that issue in its reply brief.  (See *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065, fn. 3 ["'It would be unfair to permit an appellant to wait to argue his substantive points until after the respondent exhausts its only opportunity to address an issue on appeal.'"]; *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982 ["'"To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission."'"]; *Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 190 [argument in the reply brief "was made too late to be considered"].)

---

*Angeles* (2007) 149 Cal.App.4th 836 ["[a]n appellant must provide an argument and legal authority to support his contentions," and when the appellant makes an argument, "but fails to support it with reasoned argument and citations to authority," it is forfeited].)  And in the next sentence of its opening brief Northrop makes clear it is arguing only, again, the duty to defend is broader than the duty to indemnify.

In any event, Northrop has not demonstrated the damages Hot Rods obtained in the underlying action are covered by the policies.  Northrop argues the referee's "reasoning in fixing liability against Northrop had as much to do with groundwater contamination as it did with contamination of the land," but the referee made clear that at least two categories of the award pertained to air contamination, not groundwater contamination.  These included $105,600 in lost rent due to a concern by Hot Rods' tenant "over air contamination" and a $10,000 "air study."  Northrop does not argue or cite evidence that groundwater contamination caused Hot Rods' tenant to delay its lease or prompted the air study Hot Rods commissioned.  It is possible the remaining $1,450 for "electricity and water used by Northrop on the site" related in some way to groundwater contamination, but again, Northrop has not shown the trial court erred in concluding the insurers did not have a duty to indemnify Northrop for that amount.  Northrop does not argue or cite evidence that Northrop's utilities usage related to groundwater contamination as opposed to air or property contamination.  Even though the insurers had the burden in the trial court to show the owned property exclusion barred coverage, "'[o]n review of a summary judgment, the appellant has the burden of showing error.'" (*Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 301; see *Vasquez v. Department of Pesticide Regulation* (2021) 68 Cal.App.5th 672, 685 ["Although we independently consider whether summary judgment was properly granted, "'it is the appellant's responsibility to affirmatively demonstrate error,'" and 'review is limited to issues adequately raised and supported in the appellant's brief.'"].)

23

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting the insurers' motion for summary adjudication on their cause of action regarding the duty to defend, and to enter a new order denying the motion on that cause of action and granting the motion on the insurers' cause of action regarding the duty to indemnify.  The trial court is also directed to enter an order denying the insurers' motion for summary adjudication on the causes of action in Northrop's cross-complaint.  Northrop is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.